WO                                                                                                   SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Joseph Bishop,<br><br>  Plaintiff,<br><br>v.<br><br>Siji Thomas, et al.,<br><br>  Defendants. | No.  CV 19-01757-PHX-JAT (JFM)<br><br>**ORDER** |

Plaintiff Aaron Joseph Bishop, who is currently confined in Arizona State Prison Complex (ASPC)-Eyman, Cook Unit in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Defendant Thomas moves for summary judgment, and Plaintiff opposes.[1]  (Docs. 47, 52.)

**I.    Background**

Upon screening Plaintiff's Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim against Defendant Nurse Practitioner Siji Thomas in Count One based on her alleged failure to provide Plaintiff with adequate pain medication and ordered Defendant Thomas to answer.  (Doc. 6.)  The Court dismissed the remaining Defendants.  (*Id.*)

. . .

. . .

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 49.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Relevant Facts

On April 10, 2013, Plaintiff had a left knee MRI performed while he was confined at the Pinal County Correctional Facility, and the results showed large baker's

cysts/popliteal cysts (fluid-filled cysts behind the knee) with loose bodies, chondromalacia (damage to the cartilage under the kneecap), and extensive degeneration of the patella, femoral, and lateral tibiofemoral joints. (*See* Doc. 53-1 at 38 (Pl.'s Ex. C); Doc. 53-2 at 14–17, 22 (Pl.'s Ex. D).) On April 30, 2013, Dr. Andre Jones went over the results of the MRI with Plaintiff, and Dr. Jones noted that there was no obvious meniscal or ligamentous injuries, but there was extensive degenerative joint disease. (*Id.* at 24.) Dr. Jones showed Plaintiff exercises he could do on his own and administered a cortisone injection. (*Id.*) Dr. Jones noted that if this did not help, Plaintiff "may need to consider knee replacement surgery." (*Id.*) A few weeks prior, on April 2, 2013, Dr. Jones recommended Naproxen (NSAID) for pain management and narcotic medication "only if needed. It is up to the facility if they allow controlled substances." (*Id.* at 25.)

In 2015, Plaintiff had a left knee MRI, and the results showed (1) advanced patellofemoral and mild medial and lateral compartment osteoarthritis, and (2) ossific fragments likely representing loose bodies within the posterior left knee/popliteal fossa. (*See id.* at 24.)

Plaintiff was admitted to the Arizona Department of Corrections on September 13, 2017.[2]

On September 20, 2018, Plaintiff saw Defendant Thomas at sick call for complaints of left knee pain that Plaintiff described as 8/10. (Doc. 53-1 at 8 (Pl.'s Ex. C).) Upon examination, Defendant Thomas noted "left knee tenderness on palpation. [McMurray] test positive. [L]imited flexion. [U]nable to squat." (*Id.*)[3] Defendant Thomas renewed Plaintiff's Tramadol prescription and advised him to do quadriceps strengthening exercises. (*Id.* at 9.)

---

[2] *See* Arizona Department of Corrections Inmate Datasearch, https://corrections.az.gov/public-resources/inmate-datasearch (search inmate number "074645") (last visited Dec. 2, 2020).

[3] McMurray's test is used to determine the presence of a meniscal tear in the knee, and positive findings on this test can indicate a compromised meniscus. *See* https://www.physio-pedia.com/McMurrays_Test (last visited Nov. 30, 2020).

On January 25, 2019, Defendant Thomas ordered Tramadol 50mg three times per day with an expiration date of January 29, 2019 to treat Plaintiff's left knee pain. (Doc. 48-1 at 5, 8 (Def.'s Ex. A).) It was noted that Ibuprofen had been ineffective at treating Plaintiff's pain. (*Id.* at 9.) At the time, Tramadol was a non-formulary medication that was used for short term pain management and required approval from Corizon Utilization Management. (Doc. 53 at 46–47 (Pl.'s Ex. B).)[4] Tramadol is a Schedule IV drug, which is a controlled substance, and according to prison guidelines at the time, was not considered for long-term use for pain management. (Doc. 53-2 at 56 (Pl.'s Ex. E).) For pain caused by osteoarthritis and degenerative joint disease, the first line of pain management was NSAIDs or Tylenol, home exercise, weight management, and activity modification. (*Id.*) If these treatment modalities failed, physical therapy was the next option. (*Id.* at 57.)

On January 28, 2019, Plaintiff was seen by Defendant Thomas at sick call with complaints of left knee pain and swelling. (Doc. 48-2 at 2 (Def.'s Ex. B).) Plaintiff reported that his "knee locks up and [he] could not even move it." (*Id.*) Plaintiff stated that he was unable to run, exercise, squat, or "do any thing [sic] heavy on it." (*Id.*) Upon examination, Defendant Thomas noted "limited extension and flexion of left knee. [McMurray] test positive." (*Id.*) Defendant Thomas assessed Plaintiff with possible meniscal injuries and possible osteoarthritis, and she submitted a consult request for a left knee MRI. (*Id.* at 5–6.) Defendant Thomas informed Plaintiff that "Tramadol cannot be renewed again due to policies of it to be not more than 10 days," and she advised Plaintiff to take non-steroidal anti-inflammatory drugs (NSAIDs) or Tylenol for his pain, but Plaintiff refused and walked out. (*Id.* at 6.)

On February 7, 2019, Plaintiff had another sick call appointment with Defendant Thomas and again complained of left knee pain that was aggravated by walking or any movement. (Doc. 48-3 at 2 (Def.'s Ex. C).) Plaintiff reported that Tramadol "helped a little bit" with his pain. (*Id.*) Upon examining Plaintiff's left knee, Defendant Thomas

---

[4] Corizon was the Arizona Department of Corrections' former contracted healthcare provider.

noted "less than 10 degree flexion. [T]enderness on palpation of knee joint, no swelling. [U]nable to perform all other assessments since he is not able to flex it." (*Id.*) Defendant Thomas assessed Plaintiff with "possible ligamental or meniscal injury of the left knee" and prescribed analgesic balm and medical ice; she also placed an order for a knee sleeve. (*Id.* at 5–6.) Defendant Thomas advised Plaintiff to perform gradual stretching and range of motion exercises. Defendant Thomas noted that the MRI consult request was still pending. (*Id.* at 6.) Plaintiff refused Tylenol and NSAIDs again and renewed his request for Tramadol. (*Id.*)

On February 19, 2019, Plaintiff saw Defendant Thomas again regarding his knee pain. (Doc. 48-4 at 2 (Def.'s Ex. D).) Defendant Thomas noted that an MRI had been requested and that Plaintiff was refusing Tylenol or Ibuprofen. (*Id.*) Upon examining Plaintiff's knee, Defendant Thomas noted "less than 10 degree flexion. [T]enderness on palpation of knee joint, no swelling. [U]nable to perform all other assessments since he is not able to flex it." Defendant Thomas assessed Plaintiff with possible degenerative joint disease and possible osteoarthritis. (*Id.* at 5.) Defendant Thomas prescribed Tramadol 50mg three times per day with an expiration date of February 28, 2019, and she submitted an orthopedics consult request. (*Id.* at 5–6, 8.) Defendant Thomas advised Plaintiff to continue his stretching and knee strengthening exercises. (*Id.* at 6.)

That same day, an alternative treatment plan (ATP) was issued in response to the MRI consult request Defendant Thomas had submitted. (Doc. 53-1 at 14 (Pl.'s Ex. C).) The ATP stated:

> Notes indicate that there is acute worsening of chronic knee pain, but not findings that would necessitate MRI at this time. As it's not clear how long ago [physical therapy] occurred and the pain worsened only 2 weeks ago, consider HEP [home exercise program], activity modification, and pharmacologics for pain control.

(*Id.*)

On March 21, 2019, Plaintiff was seen by Defendant Thomas, and Defendant Thomas informed Plaintiff that an ATP had been issued in response to the orthopedics

consult request that she had submitted. (Doc. 48-5 at 2 (Def.'s Ex. E).) Defendant Thomas advised Plaintiff that he was not being considered for an orthopedic consult based on his MRI results. (*Id.*)[5] The ATP was for Plaintiff to consider a physical therapy evaluation and Tylenols and NSAIDs for pain management. (*Id.*) Defendant Thomas submitted a physical therapy consult request. (*Id.* at 6.) Plaintiff stated that he did not want to take Tylenol or NSAIDs, so he continued with the analgesic balm for pain management. (*Id.*) Defendant Thomas advised Plaintiff to continue his stretching and knee strengthening exercises. (*Id.*)

On April 18, 2019, Plaintiff saw Defendant Thomas and complained that his left knee was swelling and locking up and that his pain was "at 10 now." (Doc. 48-6 at 2 (Def.'s Ex. F).) Plaintiff reported that Tramadol was the only medication that helped with his pain and that he could not take Tylenol or NSAIDs because of an allergy. (*Id.*) Defendant Thomas examined Plaintiff's left knee and noted that there was minimal swelling, normal extension, tenderness on palpation of the patella, and limited flexion. (*Id.*) Defendant Thomas assessed Plaintiff with possible exacerbation of osteoarthritis. (*Id.* 5.) Defendant Thomas prescribed Tramadol 50mg twice per day with an expiration date of April 27, 2019 and ordered medical ice for one week. (*Id.* at 6, 8.) Defendant Thomas noted that the physical therapy consult request was still pending, and she advised Plaintiff to continue his stretching exercises and quadriceps strengthening exercises. (*Id.*)

On April 29, 2019, Defendant Thomas renewed Plaintiff's analgesic balm prescription through August 26, 2019. (Doc. 48-7 at 5 (Def.'s Ex. G).)

On May 1, 2019, Defendant Thomas renewed Plaintiff's Tramadol prescription through May 15, 2019. (Doc. 48-8 at 5, 8 (Def.'s Ex. H).)

On May 6, 2019, Plaintiff was seen by Defendant Thomas at sick call, and Plaintiff reported that he was still having left knee pain and difficulty with walking and bearing weight on it, but the Tramadol and medical ice were helping. (Doc. 48-9 at 2 (Def.'s Ex.

---

[5] It is not clear whether this statement is referring to Plaintiff's 2013 or 2015 MRI results.

I).)  Upon examination, Defendant Thomas noted "mild swelling. [N]o effusion noted. [T]enderness on palpation of superior, inferior lateral and medial pole of patella. [L]imited extension and flexion." (*Id.*)  Defendant Thomas assessed Plaintiff with possible degenerative joint disease and possible osteoarthritis. (*Id.* at 5.)  Defendant Thomas advised Plaintiff to continue doing stretching, range of motion exercises, and quadriceps strengthening exercises. (*Id.* at 6.)  Defendant Thomas also extended Plaintiff's Tramadol prescription through July 4, 2019. (*Id.* at 8.)

On May 9, 2019, Plaintiff saw Defendant Thomas again for left knee pain, and Plaintiff reported that he "feel[s] better now." (Doc. 48-10 at 2 (Def.'s Ex. J).)  Defendant Thomas noted that Plaintiff had limited range of motion in his left knee and tenderness on palpation of the patella. (*Id.*)  Plaintiff was assessed with possible osteoarthritis. (*Id.* at 5.)  Defendant Thomas advised Plaintiff "to do stretching and strengthening exercises for the quadriceps, and under "Plan Notes," Defendant Thomas noted "will continue with same management follow up as needed." (*Id.* at 6.)

## IV.   Eighth Amendment Standard

To succeed on a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; as to the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with

medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**V.    Discussion**

There is no dispute that Plaintiff's left knee injuries and associated chronic pain constituted serious medical needs. Thus, the Court must determine whether Defendant Thomas' response to Plaintiff's serious medical needs amounted to deliberate indifference.

On this record, the treatment that Defendant Thomas provided to Plaintiff did not constitute deliberate indifference. Plaintiff's medical records show that during each of her encounters with Plaintiff, Defendant Thomas responded to Plaintiff's left knee pain, including by renewing Tramadol when appropriate based on her professional judgment and prison policy. Based on her training and experience, Defendant Thomas did not believe that Tramadol was appropriate for long-term pain management, and when she suggested that Plaintiff try NSAIDs and/or Tylenol to manage his pain instead, Plaintiff refused. Plaintiff did not inform Defendant Thomas of his purported allergy to NSAIDs and Tylenol until April 18, 2019, and once he did, Defendant Thomas did not suggest these medications to Plaintiff anymore and consistently renewed Plaintiff's Tramadol from thereon.

1    Plaintiff's medical records show that Defendant Thomas also ordered a knee sleeve and
2    medical ice, gave Plaintiff's strengthening and mobility exercises to perform, and
3    submitted consult requests for an MRI, orthopedics, and physical therapy.  The MRI and
4    orthopedics consults were ultimately ATP'd by Utilization Management, but there is no
5    evidence that Defendant Thomas could have overridden this decision.

6    In response, Plaintiff contends that he informed Defendant Thomas several times
7    that NSAIDs and analgesics did not give him any pain relief, that Defendant Thomas would
8    only prescribe Tramadol for 4–10 days at a time, and that "each time Plaintiff was
9    prescribed Tramadol there was a 2–5 day lag as the medication was shipped before any
10   pain relief was given." (Doc. 54 (Pl. Decl.) ¶¶ 2, 6, 7.)  But there is no evidence that any
11   lags in shipping the Tramadol to the pharmacy were caused by Defendant Thomas, and as
12   previously discussed, Defendant Thomas based her initial decision to not renew Tramadol
13   on her professional judgment that Tramadol was not an appropriate course of treatment for
14   long-term pain management.  Plaintiff refused to try anything other than Tramadol.
15   However, once Plaintiff told Defendant Thomas that he was allergic to NSAIDs and
16   Tylenol, Defendant Thomas began prescribing Tramadol again.  Plaintiff is not qualified
17   to make medical diagnoses or treatment decisions, and his disagreement with Defendant
18   Thomas' course of treatment is not enough to create a genuine issue for trial.  Absent facts
19   showing that Defendant Thomas' response to Plaintiff's serious medical need was
20   medically inappropriate and constituted deliberate indifference, summary judgment will be
21   granted to Defendant Thomas.

22   **IT IS ORDERED:**

23   (1)    The reference to the Magistrate Judge is withdrawn as to Defendant's Motion
24   for Summary Judgment (Doc. 47).

25   (2)    Defendant's Motion for Summary Judgment (Doc. 47) is **granted**, and the
26   action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

27   Dated this 10th day of December, 2020.

28

James A. Teilborg
Senior United States District Judge